UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN MORAN-GOMEZ,<br><br>                Petitioner,<br>    v.<br><br>WARDEN, NORTHWEST ICE<br>PROCESSING CENTER et al.,<br><br>              Respondents. | CASE NO. 2:26-cv-02261-LK<br><br>ORDER DENYING PETITION FOR<br>HABEAS CORPUS |

This matter comes before the Court on Petitioner Juan Moran-Gomez's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons set forth below, the Court denies the petition.[1]

## I.   BACKGROUND

Moran-Gomez is a native and citizen of Mexico. Dkt. No. 10 at 2. Between 2002 and 2004, he was "encountered by the United States Border Patrol Agents and voluntarily returned to Mexico" on numerous dates. *Id.* He "last entered the United States on an unknown date at an unknown place without being inspected by an immigration officer at a place other than designated

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

ORDER DENYING PETITION FOR HABEAS CORPUS - 1

by the Attorney General." *Id.*

Moran-Gomez has a criminal record. In 2019, he was arrested in Oregon for driving under the influence and sentenced in 2021 to two days in jail. *Id.* In 2021, he was arrested in Oregon for "Assault in Fourth Degree [ORS 163.160], Stalking [ORS 163.732], and Sex Abuse Second Degree [ORS 163.425]." *Id.* Related to the 2021 incident, he was also subsequently charged with multiple counts of "Contempt of Court [ORS 033.045], . . . Stalking [ORS 163.732(2)(a)]," and "[four] counts of Violation of Release Agreement [ORS 135.290]." *Id.* In December 2022, the Marion County Circuit Court convicted him of "Assault in the Fourth Degree-domestic violence [ORS 163.160], Stalking [ORS 163.732], and Sexual Abuse in the Second Degree [ORS 163.425]," sentenced him to 60 days in jail, and required him to register as a sex offender. *Id.* at 3; Dkt. No. 11-2 at 6. Moran-Gomez has initiated a petition challenging his 2022 criminal convictions "based on constitutional and procedural defects and ineffective assistance of counsel." Dkt. No. 14 at 35.

"The National Criminal Analysis Targeting Center ('NCATC') issued a lead referral for [Moran-Gomez], identifying him as a registered sex offender who last entered the United States without being inspected, admitted, or paroled by an Immigration Officer." Dkt. No. 10 at 3. On February 20, 2024, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") found Moran-Gomez to be "non-compliant in sex registry" and was unable to locate him. *Id.*

On October 16, 2025, ERO issued a warrant for Moran-Gomez's arrest. *Id.*; *see also* Dkt. No. 11-3. On the same day, "ERO Officers, with 'POLICE' marked attire and ICE badges displayed encountered [Moran-Gomez] during a fugitive field operation." Dkt. No. 10 at 3. According to ERO Deportation Officer Subero Arias, Moran-Gomez "actively resisted arrest, causing ERO Officers to use force to subdue [him] and place him in handcuffs." *Id.* After taking

ORDER DENYING PETITION FOR HABEAS CORPUS - 2

Moran-Gomez into custody, ERO served him with a Form I-200, Warrant for Arrest of Alien, and a Form I-826, Notice of Rights and Request for Disposition. *Id.* ERO also served Moran-Gomez with a Notice to Appear ("NTA"), charging him as inadmissible pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (8 USC § 1182(a)(6)(A)(i)), as a noncitizen present in the United States without being admitted or paroled, and pursuant to § 212(a)(2)(A)(i)(I) of the INA (8 USC § 1182(a)(2)(A)(i)(I)), as a noncitizen who had been convicted of, or who admitted having committed, or who admitted committing acts which constituted the essential elements of a crime involving moral turpitude or an attempt or conspiracy to commit such a crime. *Id.* at 3–4; *see also* Dkt. No. 11-4 at 2, 5.

Moran-Gomez appeared for a merits hearing before an immigration judge ("IJ") on December 25, 2025. Dkt. No. 10 at 4. The IJ denied relief and ordered him removed to Mexico. *Id.* Moran-Gomez appealed that decision to the Board of Immigration Appeals ("BIA"), and his appeal is pending. *Id.* Meanwhile, Moran-Gomez remains detained at the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 1 at 1.

On June 29, 2026, Moran-Gomez filed a petition for a writ of habeas corpus, Dkt. No. 1, alongside motions for a temporary restraining order, to stay his removal, and to designate his wife as his legal assistant and for other similar relief, Dkt. Nos. 3–5. The Court issued a scheduling order requiring notice and expedited briefing, Dkt. No. 6, and denied Moran-Gomez's motions, Dkt. No. 7. Respondents[2] subsequently filed a return, Dkt. No. 9, and Moran-Gomez filed a traverse, Dkt. No. 14.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DENYING PETITION FOR HABEAS CORPUS - 3

## II.  DISCUSSION

Moran-Gomez contends that his "unlawful and continued immigration detention" violates his due process rights. Dkt. No. 1 at 6. He asserts that he is detained "despite a pending BIA appeal, pending T-Visa application, pending post-conviction relief, and substantial family and humanitarian equities," including his "role as sole custodial parent of two U.S. citizen children." *Id.* He requests an order requiring "production of the . . . complete administrative record including NCATC and Fugitive Operations records," an evidentiary hearing, a writ of habeas corpus that orders his release "under reasonable conditions of supervision, or alternatively . . . a constitutionally adequate [c]ustody hearing," and "any further relief the Court deems just and proper." *Id.* at 7. Respondents argue that Moran-Gomez is "subject to mandatory detention under 8 U.S.C. § 1226(c)(1), that his detention does not violate due process, and that the miscellaneous claims and requested relief lack merit." Dkt. No. 9 at 2.

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The Supreme Court has held that federal courts have jurisdiction to review a constitutional challenge to a noncitizen's detention under § 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

ORDER DENYING PETITION FOR HABEAS CORPUS - 4

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore*, 538 U.S. at 523 (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.    Moran-Gomez Is Not Entitled to Habeas Relief**

1.   Section 1226(c) Mandates Detention

Respondents aver that Moran-Gomez is mandatorily detained under 8 U.S.C. § 1226(c). Dkt. No. 9 at 5. Specifically, they argue that his 2022 conviction for Sexual Assault in the Second Degree "place[d] him within the class of aliens subject to mandatory detention under 8 U.S.C. § 1226(c)(1), which directs that the Secretary shall take into custody any alien who is inadmissible by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2)." *Id.* at 5–6. Respondents also contend that "this mandatory obligation applies even where, as here, a significant period of time has elapsed between an alien's release from criminal custody and apprehension by immigration authorities." *Id.* at 6 (citing *Nielsen v. Preap*, 586 U.S. 392, 413–14 (2019)).

In his traverse, Moran-Gomez "clarifies the scope of this proceeding." Dkt. No. 14 at 2. He "does not dispute that he was convicted in Marion County Circuit Court in December 2022, does not dispute that he is required to register as a sex offender as a condition of that conviction, and does not ask this Court to relitigate his guilt or innocence." *Id.* Instead, he asks the Court to decide two "narrower" questions: whether his "continued civil immigration detention—now approaching

ORDER DENYING PETITION FOR HABEAS CORPUS - 5

ten months, mandatory in name only, and untethered from any individualized finding of current danger or flight risk—comports with [due process], and whether the process by which [he] was labeled a 'fugitive' and taken into custody was arbitrary and unsupported by disclosed evidence." *Id.* He also acknowledges that he pleaded guilty to the charges in Marion County. *Id.* Moran-Gomez further states that "[t]he Government is correct that Nielsen v. Preap, 586 U.S. 392 (2019), forecloses any argument that the statutory 'when released' language in 8 U.S.C. § 1226(c)(l) creates a temporal safe harbor exempting [him] from the mandatory detention category based on the gap between his 2022 conviction and his 2025 arrest." *Id.* at 15.

Section 1226 of title 8 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

Under Section 1226(c), however, noncitizens who have committed certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(A)–(E).[3] The Supreme Court's decisions in *Demore* and *Jennings* addressed the meaning of Section 1226(c) as it relates to bond hearings.

In *Demore*, a noncitizen who had been a lawful permanent resident for 10 years (Kim) was detained under Section 1226(c) after he was convicted of first-degree burglary and "petty theft

---

[3] Section 1226(c) was amended on January 29, 2025, but those amendments are irrelevant to this case. *See* 139 Stat. 3 (2025).

ORDER DENYING PETITION FOR HABEAS CORPUS - 6

with priors" in California. 538 U.S. at 513. The Immigration and Naturalization Service ("INS") charged him with being deportable from the United States in light of these convictions, and detained him pending his removal hearing. *Id.* After roughly six months of detention, Kim filed a habeas corpus action arguing that his detention "violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Id.* at 513–14. The Supreme Court reversed lower court decisions holding that Kim was entitled to a bond hearing, emphasizing that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80 (1976)). It held that Congress— "justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings"—"may require that persons such as [Kim] be detained for the brief period necessary for their removal proceedings." *Id.* at 513; *see also id.* at 528 ("[I]n adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of [noncitizens] pending their removal hearings would lead to large numbers of deportable criminal [noncitizens] skipping their hearings and remaining at large in the United States unlawfully."). In response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," the Court pointed to its holding in *Zadvydas*, which "permit[ed] [noncitizens] to be detained for several months prior to such a hearing." *Id.* at 529 n.11.

The Supreme Court's decision in *Jennings* expanded upon the Court's analysis of Section 1226(c). *Jennings* involved a class of noncitizens who were detained under Sections 1225(b), 1226(a), or 1226(c) pending completion of removal proceedings and who had been detained more than six months without a bond hearing. 583 U.S. at 290. The Ninth Circuit "construed §§ 1225(b) and 1226(c) as imposing an implicit 6-month time limit on a[ noncitizen]'s detention under these sections," and held that a noncitizen "must be given a bond hearing every six months and that

ORDER DENYING PETITION FOR HABEAS CORPUS - 7

detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* at 291–92. The Supreme Court reversed, holding that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings," and that there was no justification for any of the procedural requirements that the Ninth Circuit imposed "without any arguable statutory foundation." *Id.* at 296–97. With respect to Section 1226(c) in particular, the Court emphasized that "by allowing [noncitizens] to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute"—and the statutory text made clear that detention "*must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Id.* at 303 (quoting 8 U.S.C. § 1226(a)); *see also id.* at 304 ("By expressly stating that the covered [noncitizens] may be released 'only if' certain conditions are met, . . . the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained [noncitizens] under any other conditions.").

Accordingly, noncitizens detained under Section 1226(c) are not statutorily eligible for release on bond. *See Avilez v. Garland*, 69 F.4th 525, 535–36 (9th Cir. 2023) (explaining that "noncitizens subject to mandatory detention under Subsection C are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2)."). The Court therefore focuses on Moran-Gomez's due process challenge to his detention.

   2. <u>Continued Detention Does Not Violate Moran-Gomez's Due Process Rights</u>

Even if a petitioner's continued detention is statutorily permitted under 8 U.S.C. § 1226(c), the detention must also comport with due process. *See Gomez v. ICE Field Off. Dir.*, No. 2:25-cv-

02242-TL-TLF, 2026 WL 449536, at *3 (W.D. Wash. Jan. 27. 2026), *report and recommendation adopted*, 2026 WL 447409 (W.D. Wash. Feb. 17, 2026).

Moran-Gomez requests "release under reasonable conditions of supervision," Dkt. No. 1 at 7, but the Court cannot grant that relief. "There is no authority supporting petitioner's claim that he is entitled to an order of release" from this Court when the statute mandates his detention. *Martinez v. Clark*, No. 2:18-cv-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019) (explaining that if a due process violation is found with respect to a noncitizen detained under Section 1226(c), "the proper remedy is a bond hearing"), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019); *see also Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL, 2024 WL 1676681, at *1 (W.D. Wash. Apr. 18, 2024) (same). The Court thus focuses on whether due process requires a bond hearing under these circumstances.

The Ninth Circuit has declined to rule on whether due process requires a bond hearing for a noncitizen detained under § 1226(c). *Avilez*, 69 F.4th at 538. However, it has observed that after the Supreme Court's decision in *Jennings*, "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022). The circuit courts that have addressed the issue post-*Jennings* are split.

In 2021, the First Circuit rejected the contention that "all persons detained under section 1226(c) have a constitutional right to a hearing concerning the reasonableness of their continued detention after they have been detained longer than six months," but acknowledged "that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention under section 1226(c)." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (citation modified). Similarly, in *German Santos v. Warden Pike County Correctional Facility*, the Third Circuit "explicitly declined to adopt a presumption of reasonableness or unreasonableness of any

ORDER DENYING PETITION FOR HABEAS CORPUS - 9

duration," instead imposing a "highly fact-specific inquiry" that considers "the duration of detention" along with "all the other circumstances," "whether the detention is likely to continue," "the reasons for the delay, such as a detainee's request for continuances," and "whether the [noncitizen's] conditions of confinement are meaningfully different from criminal punishment." 965 F.3d 203, 210–11 (3d Cir. 2020) (citation modified). And in *Black v. Decker*, the Second Circuit joined the First and Third Circuits "in rejecting a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." 103 F.4th 133, 150 (2d Cir. 2024). Instead, the court held that due process challenges to prolonged detention under section 1226(c) should be reviewed under the *Mathews v. Eldridge* framework, as it is a "flexible test" that "takes account of individual circumstances" and "comports with the Supreme Court's guidance in *Jennings* that 'due process is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'" *Id.* at 148 (quoting *Jennings*, 583 U.S. at 314 (other citations and quotation marks omitted)).

In contrast, the Eighth Circuit held that Supreme Court precedent "leave[s] no room for a multi-factor "reasonableness' test." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024). In its view, "*Zadvydas* and *Demore* have already done whatever balancing is necessary," permitting the detention of a noncitizen "for as long as deportation proceedings are still '*pending.*'" *Id.* (quoting *Demore*, 538 U.S. at 527 and quoting with approval *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) for the proposition that a noncitizen detained under Section 1226(c) "has the keys in his pocket" and can "end[] his detention immediately" by "withdraw[ing] his defense . . . and return[ing] to his native land").

This Court joins the First, Second, and Third Circuits in rejecting a bright-line rule in this context. Consistent with the Ninth Circuit's expression of "grave doubt[] that any statute that

ORDER DENYING PETITION FOR HABEAS CORPUS - 10

allows for arbitrary prolonged detention without any process is constitutional," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), though, the Court also rejects the proposition that detention is permissible, no matter how prolonged, for as long as deportation proceedings are still pending. Courts in this District apply an individualized test to determine whether a noncitizen's prolonged mandatory detention under 1226(c) without a bond hearing violates due process. *Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *5 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025) (citing *Martinez*, 2019 WL 5968089, at *8–9 n.8). In particular, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Martinez*, 2019 WL 5968089, at *7. Both parties apply the *Martinez* test. Dkt. No. 9 at 6–9; Dkt. No. 14 at 11–15.

The first factor "is the most important one." *Ashemuke v. ICE Field Office Dir.*, No. 2:23-cv-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024). Moran-Gomez argues that his detention had spanned nine and a half months at the time he filed his traverse "and continues to grow with no fixed endpoint." Dkt. No. 14 at 11. Respondents contend that "[t]he total length of detention of approximately nine months since [Moran-Gomez's] arrest on October 16, 2025, is significant but not the type of indefinite or extraordinarily prolonged detention that has triggered due process violations." Dkt. No. 9 at 7 (citing *Zadvydas*, 533 U.S. at 701). The Court finds that Moran-Gomez's over nine-month detention weighs in his favor. *See, e.g., Portales v.*

ORDER DENYING PETITION FOR HABEAS CORPUS - 11

*Immigr. & Customs Enf't Field Off. Dir.*, No. C26-817-RSM, 2026 WL 1948056, at *2 (W.D. Wash. July 6, 2026) (finding that detention of over eight months favored petitioner); *Ashemuke*, 2024 WL 1683797, at *4 ("The longer mandatory detention continues beyond the 'brief' period authorized in *Demore*, the harder it is to justify."); *but see Rashad v. LaRose*, No: 3:26-cv-1750-CAB-VET, 2026 WL 962660, at *1 (S.D. Cal. Apr. 9, 2026) (finding that the length of detention factor "weighs heavily against Petitioner given that he has been detained for approximately nine months"); *Sibomana v. LaRose*, No. 22-CV-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) (noting that courts "become extremely wary of permitting continued custody absent a bond hearing" when "detention continues past a year").

Regarding the second factor—how long detention is likely to continue absent judicial intervention—ERO Deportation Officer Subero Arias states that "ICE expects that it will be able to expeditiously remove [Moran-Gomez] to Mexico in the event the BIA dismisses [his] appeal." Dkt. No. 10 at 4. However, as Moran-Gomez contends, Dkt. No. 14 at 11–12, that statement sheds no light on how long resolution of the appeal could take. In light of the dearth of evidence about this factor, it is neutral. *Hossain v. Scott*, No. 2:26-cv-00923-LK, 2026 WL 1533003, at *5 (W.D. Wash. June 1, 2026) (finding this factor neutral based on an underdeveloped record).

The third factor—whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable—weighs in Moran-Gomez's favor because the over nine months he has spent in detention exceeds his 60-day prison term. Dkt. No. 10 at 3.

The fourth factor—the nature of the crimes the petitioner committed—is "indicative of whether the detainee would be a danger to the community or a risk of flight such that a bond hearing would be futile." *Odimara*, 2024 WL 3862256, at *7. This factor favors detention because as Respondents argue, Moran-Gomez "stands convicted of Sexual Abuse in the Second Degree, Stalking, and domestic violence assault," as well as a prior conviction for driving under the

influence. Dkt. No. 9 at 8; *see also* Dkt. No. 10 at 2–3; Dkt. No. 11-1 at 4. Moran-Gomez contends that a later hearing regarding the custody of his minor children casts doubt on the credibility of his accuser (who is also the mother of his children), Dkt. No. 14 at 12, but he pleaded guilty to those crimes, *id.* at 2. This factor favors Respondents because Moran-Gomez was convicted of serious crimes. S*ee Gomez*, 2026 WL 449536, at \*5 (finding that this factor weighed in the government's favor when the petitioner had been convicted of "Assault by means of Force likely to cause Great Bodily Injury").[4]

The fifth factor examines the conditions of detention. Moran-Gomez's filings do not address the conditions at the NWIPC, Dkt. Nos. 1, 14, so this factor is neutral. Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at \*10. These factors are neutral because as Respondents note, Dkt. No. 9 at 9, there is no evidence of delay. Although Moran-Gomez argues that the government was not diligent "as early as February 20, 2024" when it "confirmed [that he] was non-compliant with sex offender registry requirements," Dkt. No. 14 at 14, that argument does not demonstrate a lack of diligence in removal proceedings or while Moran-Gomez has been detained.

Finally, to evaluate the eighth factor—the likelihood that the removal proceedings will result in a final order of removal—the Court "considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at \*10. Moran-Gomez has appealed the

---

[4] Respondents also contend that this factor weighs in favor of detention because Moran-Gomez was "non-compliant" with his obligation to register as a sex offender. Dkt. No. 9 at 8. Moran-Gomez avers that he did register and requests an evidentiary hearing on this issue, whether he was a "fugitive" at the time he was detained, and whether his detention was triggered by a communication from his ex-partner to law enforcement. Dkt. No. 14 at 3–5. He also seeks discovery on similar issues. Dkt. No. 1 at 7 (asking the Court to order "production of the . . . complete administrative record including NCATC and Fugitive Operations records"). No evidentiary hearing is required and there is no good cause for discovery because even if the Court assumed these facts in Moran-Gomez's favor, the result would not change. *See, e.g.*, *Tillery v. Shartle*, 778 F. App'x 426, 428 (9th Cir. 2019) (applying "good cause" standard to a request for discovery in a § 2241 habeas case); *Hassan v. Bondi*, No. C25-2444-KKE, 2026 WL 370165, at \*1 (W.D. Wash. Feb. 10, 2026) (same).

ORDER DENYING PETITION FOR HABEAS CORPUS - 13

decision denying him relief and ordering him removed to Mexico. Dkt. No. 10 at 4. The Court does not have sufficient information to determine whether his appeal has merit or whether he ultimately will prevail. Consequently, this factor is neutral.

Moran-Gomez also lists his pending T-visa application as one of the "equities" weighing in his favor, noting that a granted application would provide him with lawful status. Dkt. No. 14 at 13, 38–39. Respondents argue that "[a] pending T-Visa application does not divest ERO of detention authority or create a constitutional right to release." Dkt. No. 9 at 8 (citing 8 U.S.C. § 1226(c)).[5] Moran-Gomez has not developed the record on this issue or shown that his visa application exempts him from mandatory detention or weighs in his favor in the due process analysis. 8 C.F.R. § 1214.2(a) (if an applicant for a T-Visa "is in DHS custody pending the completion of immigration proceedings, DHS may continue to detain the [noncitizen] until a decision has been rendered on the application"; any request for bond "will be governed by the provisions of part 236 of this chapter"); 8 C.F.R. § 236.1(c)(3)–(4) (describing detention scheme for criminal noncitizens); *cf. Ibarra Preciado v. Hermosillo*, No. 2:25-cv-02561-TMC, 2026 WL 25254, at *2 (W.D. Wash. Jan. 5, 2026) (declining to decide on an underdeveloped record whether petitioner's pending T-visa application "affects the lawfulness of his discretionary detention under § 1226(a)").

In sum, the Court finds that the first and third factors weigh in Moran-Gomez's favor. The rest of the factors are either neutral or weigh in the government's favor. On balance, the Court does not find that Moran-Gomez's "continued mandatory detention under § 1226(c) has become unreasonable and in violation of due process." *Martinez*, 2019 WL 5968089, at *11. Consequently,

---

[5] "A T-Visa provides immigration protection to noncitizens who are victims of severe forms of human trafficking and comply with reasonable requests for assistance in the investigation or prosecution of acts of trafficking." *Francisco v. U.S. Citizenship and Immigr. Servs.*, No. 26-CV-1834 TWR (SBC), 2026 WL 810068, at *1 (S.D. Cal. Mar. 24, 2026) (citing 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.202).

ORDER DENYING PETITION FOR HABEAS CORPUS - 14

the Court does not order the government to provide a bond hearing at this time. If continued detention becomes unreasonably prolonged or indefinite, Moran-Gomez may file another habeas petition at that time. Now, though, he is not entitled to habeas relief.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Moran-Gomez's habeas petition. Dkt. No. 1.

Dated this 7th day of August, 2026.

Lauren King
United States District Judge

ORDER DENYING PETITION FOR HABEAS CORPUS - 15